FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 20, 2022

SEAN F. McAVOY, CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>J. TIM JACKSON and ROBERTA JACKSON, husband and wife; IBEX CONSTRUCTION, INC., a Washington corporation; STEVEN O. ANDERSON, as personal representative of the ESTATE OF EDWARD K. DUMAW, on behalf of the Estate and surviving family members, CARRIE DUMAW, KRISTEN DUMAW, MEGAN DUMAW, and ANNA DUMAW, individually; THEODORE LISTER; DALE RANDALL HILL; JACK STEGALL, JR; INLAND NORTHWEST EQUIPMENT AUCTION, INC., d/b/a REINLAND AUCTIONEERS, a Washington corporation; REINLAND, INC., d/b/a REINLAND EQUIPMENT AUCTION, an Idaho corporation; REINLAND PROPERTIES, LLC, an Idaho limited liability company; THOMAS REINLAND and KUNYA REINLAND, husband and wife; ASHLY REINLAND and JOHN DOE REINLAND, husband and wife; PACIFIC HIDE & FUR DEPOT, d/b/a PACIFIC STEEL & RECYCLING, a Montana corporation; PACIFIC HIDE & FUR DEPOT, INC., d/b/a PACIFIC | No. 2:20-CV-00150-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** *1

STEEL & RECYCLING, a Washington corporation;

          Defendants.

Before the Court are Defendants' Motion for Summary Judgment, ECF No. 49;[1] Plaintiff's Motion for Summary Judgment, ECF No. 52; and Defendant Pacific Hide & Fur Depot's Stipulated Motion to Dismiss with Prejudice, ECF No. 69.[2] The Motions were considered without oral argument. Plaintiff Country Mutual Insurance Company ("Country Mutual") is represented by Sarah Eversole. Defendants Steven O. Anderson, Carrie Dumaw, Kristen Dumaw, Megan Dumaw, and Anna Dumaw are represented by Sara Maleki, Janelle M. Carney, and Jennifer Leigh Bechtold. Defendants Inland Northwest Equipment Auction, Inc., Reinland, Inc., Reinland Properties, Inc., Thomas Reinland, Kunya Reinland, Ashly Reinland, and John Doe Reinland (the "Reinlands") are represented by James Bernard King and Christopher Joseph Kerley. Defendant Washington State Assistant Attorney General Michael K. Hall is representing himself.

This case is about personal and environmental injury and who will pay the damages. On August 12, 2015, a metal cylinder was loaded into a shear for recycling

---

[1] The Motion is brought by Defendants/Counterclaimants Inland Northwest Equipment Auction Inc. d/b/a Reinland Auctioneers, Reinland, Inc., d/b/a/ Reinland Equipment Auction, Reinland Properties, LLC, Thomas Reinland and Kunya Reinland, and Ashley Reinland.

[2] On January 13, 2022, Plaintiff Country Mutual and Defendant Pacific Hide & Fur Depot d/b/a Pacific Steel & Recycling filed a Stipulated Motion to Dismiss with Prejudice. ECF No. 69. Good cause existing, the Court grants the motion. Country Mutual's claim against Pacific Hide & Fur Depot d/b/a Pacific Steel & Recycling are hereby dismissed with prejudice and without further award of attorneys' fees or costs to either party.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *2**

at Pacific Steel & Recycling in Spokane, Washington. The cylinder turned out to be a pressurized vessel containing poisonous chlorine gas—which exploded and resulted in the death of one individual, serious injuries to others, and environmental contamination. After the accident, several lawsuits were filed in state and federal court. The Reinlands, insured by two Country Mutual policies, tendered the lawsuits to its insurer for defense. Country Mutual accepted defense under a reservation of rights and now brings this action for declaratory judgment against its insureds claiming that it has no further duty to defend.

The Court grants Country Mutual's Motion for Summary Judgment and denies the Reinlands' Motion for Summary Judgment. The Court finds that there is no conflict between Washington and Idaho law, and therefore, Washington law governs interpretation of the insurance policies. In this case, the policies' pollution exclusions preclude coverage of the damages and injuries asserted in the underlying lawsuits. Because the initial peril is uncovered, the Court does not engage in efficient cause analysis. Finally, the Court concludes that Country Mutual issued a legally sufficient reservation of rights. Declaratory judgment is issued in Country Mutual's favor.

## Background[3]

**Relevant Actors.** Defendants Thomas and Kunya Reinland are a married couple and the sole owners and officers of two auction companies: (1) Inland Northwest Equipment Auction, Inc. d/b/a Reinland Auctioneers ("Inland NW"), a Washington corporation, and (2) Reinland Inc. d/b/a Reinland Equipment Auction ("Reinland, Inc."), an Idaho corporation. Reinland, Inc.'s business premises are

---

[3] The parties do not dispute any facts for purposes of summary judgment. These facts can be found in the parties' respective statements of material facts, submitted pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(c)(1). ECF Nos. 52, 56, 61.

located in Post Falls, Idaho. The Reinlands also own a real estate holding company, Reinland Properties, LLC; the Post Falls property is held in its name.

**The Agreement.** In March or April 2015, Defendant Tim Jackson, owner of Ibex Construction, Inc., requested that Mr. Reinland hold an on-site auction at Mr. Jackson's property located on North Regal in Spokane, Washington (the "North Regal property"). A tire company also occupied the site and stored property thereon. Mr. Reinland visited the North Regal property and reviewed the inventory to be sold at the auction. After a view of the property and inventory, Mr. Reinland and Mr. Jackson agreed to a date for an on-site auction.

A couple weeks later, Mr. Reinland visited Mr. Jackson again on the North Regal property. Mr. Reinland told Mr. Jackson that the gentleman who owned the tire company was encroaching on the area where Mr. Reinland needed to line up equipment for the auction. Mr. Jackson agreed that it would be too difficult to line the auction items up on the property. Instead, Mr. Reinland suggested to Mr. Jackson that he move the equipment and other auction items to the Reinland, Inc. auction site in Post Falls, Idaho.

Around June 2015, Mr. Reinland met with Mr. Jackson again at the North Regal property. They discussed the cost of moving the auction items to the Reinland, Inc.'s business premises in Post Falls. Mr. Jackson stated that the cost was too high. At that point, Mr. Reinland offered to buy the auction items for $32,500, and Mr. Jackson agreed on the spot.

The agreement was that Mr. Reinland would pay Mr. Jackson $32,500, and in exchange, Mr. Reinland would take the auctionable items—primarily vehicles, equipment, and shop items—from the front area of the North Regal property. ECF No. 56 at 10, ¶ 42. Items taken from the property would become Mr. Reinland's property and sold at auction through Reinland, Inc. After reaching this agreement, Mr. Reinland visited the North Regal property to haul away the sellable items. The

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT . . . *4

hauling of auctionable items occurred over the course of five to seven non-consecutive days.

Gordon Beck was a customer of the Reinland family auction business. He is a lifelong scrap metal recycler and does business with Pacific Steel & Recycling ("Pacific Steel"). While still picking through items to select for the auction, Mr. Reinland discussed the possibility of Mr. Beck becoming involved in the transaction. Mr. Beck indicated that he was interested in "doing the scrap metal" at the North Regal property. Mr. Beck and Mr. Reinland then met at the North Regal property. *Id.* at 15, ¶ 70. Mr. Reinland instructed Mr. Beck to "take whatever he would be okay taking for scrap." *Id.* at 16, ¶ 74. The compensation scheme was that Mr. Reinland and Mr. Beck would split the "scrap money," which would ultimately be paid by whomever Mr. Beck hauled the scrap to. Mr. Beck arranged with Pacific Steel to haul the scrap metal off the site.

About halfway through the yard and toward the north fence of the North Regal property, there was a pressurized metal vessel containing chlorine gas. It was a 1,500-gallon tank, rotted out at the bottom and estimated to be three feet across and six feet long. Mr. Beck estimates that the cylinder was about 1,000 to 1,500 pounds. He believed the vessel was part of a roller. Unfortunately, he was wrong.

Donald Bond was a driver for Pacific Steel. On August 12, 2015, Mr. Bond went to the north side of Spokane to do a pick-up for recycling materials in an "end dump"—a semi-trailer that hydraulicly lifts to dump loads, similar to a dump truck. Mr. Bond knew he would be picking up "a mixture of" miscellaneous scrap iron. *Id.* at 36, ¶ 198. Mr. Bond and Mr. Beck loaded materials onto his truck that day. The material was loaded into the end dump with an excavator operated by Mr. Beck. When Mr. Beck was loading the truck, Mr. Bond stood off to the front and out of the way. He did not watch every single piece of scrap material that was loaded, but he saw Mr. Beck load the pressurized tank. Neither Mr. Bond nor Mr. Beck looked at or inspected the tank before it was loaded.

When Mr. Bond arrived at Pacific Steel later that day, he pulled onto the scale and informed the scale individual that he had a load of mixed materials from Mr. Beck. He then went around to the scrap yard to dump the load. Mr. Bond dumped the materials so they could be loaded into the "Metso," a large shear. Edward Dumaw was the one loading the shear with materials for processing, and Ted Listor was operating the shear. Afterward, Mr. Bond learned that there was an accident when the pressurized tank with chlorine gas was loaded into the shear. The accident contaminated the surrounding environment and caused significant bodily injuries to several people, as well as the unfortunate death of Mr. Dumaw.

**The Policies and Tender to Insurance.** Country Mutual Insurance Company issued policy number AM 9005148 06, a package of comprehensive general liability, auto and first party property coverages, to Inland Northwest Equipment Auction, Inc., which was effective from December 23, 2014 to December 23, 2015 (the "Inland NW policy"). *See* ECF No. 1-1. Under Section II – Liability, the Inland NW policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." *Id.* at 79. Plaintiff also issued businessowners' policy number AM 9167456 to Reinland, Inc., which was effective December 23, 2014 to December 23, 2015 (the "Reinland policy," or collectively, the "policies"). *See* ECF No. 1-2. The liability portion of the Reinland policy is substantially identical to the Inland NW policy. ECF No. 1-2 at 70.

Relevant to the parties' present dispute, the policies contain what is known as an "absolute pollution exclusion" provision, which provides that liability coverage does not apply to

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> …

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *6**

> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>> (i) Any insured; or
>> (ii) Any person or organization for whom you may be legally responsible;
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing or have completed operations, if the pollutants are brought on or to the premises, site or location in connection with such operation by such insured, contractor or subcontractor. However, this subparagraph does not apply to:
>
>> . . .
>> (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from material brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor . . . .

ECF No. 1-1 at 82; ECF No. 1-2 at 73. The exclusion is also modified by a Washington Pollution Amendatory Endorsement, AIL 10 35 06 06. The relevant portion of that endorsement provides the operative definition of the term "pollutants" and "waste":

> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant. Including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Lead is a pollutant when it poses an actual or alleged environmental or physical hazard to life, such as when it causes actual or alleged bodily injury arising out of its ingestion, inhalation or absorption. This description of lead as a pollutant is not to be construed in any way as limiting the scope or breadth of this definition.

ECF No. 1-1 at 11; ECF No. 1-2 at 85.

On June 29, 2017, Felix W. Shuck filed an action under case number 17-2-02508-3 in Spokane County Superior Court, and on August 17, 2017, David M. Levin and Teresa Jan Levin filed an action in this district court under case number

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *7**

2:17-CV-00288-SAB, seeking damages for personal injuries arising out of the August 12, 2015 incident. On April 3, 2018, Defendant Steven O. Anderson, as personal representative of the Estate of Edward K. Dumaw, and on behalf of the Estate and surviving family members Carrie Dumaw, Kristen Dumaw, Megan Dumaw, and Anna Dumaw, filed a complaint in the Spokane County Superior Court under case number 18-2-01432-2 seeking damages for wrongful death and personal injuries arising out of the incident. On July 27, 2018, Theodore Lister, Dale Randall Hill, and Jack Stegall, Jr. filed a complaint in Spokane County Superior Court under case number 18-2-03283-5, also seeking damages for personal injuries. All the cases (the "Underlying Lawsuits") arose out of the same August 17, 2017 incident.

On August 9, 2018, Inland NW, and Reinland, Inc., tendered the lawsuits to Country Mutual for defense. On October 15, 2018, Country Mutual accepted defense of the lawsuit and issued a reservation of rights letter under the Inland NW policy. On April 15, 2019, Country Mutual accepted defense and issued a second reservation of rights letter under the Reinland, Inc. policy.

## Legal Standard

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Where, as here, parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Accordingly, it is the district court's duty to "review each cross-motion separately . . . and review the evidence submitted in support of each cross-motion." *Id.*

**Discussion**

The primary disputes in this action are whether Country Mutual reserved its rights to deny coverage for the claims in dispute and whether Country Mutual has a duty to defend its insureds. To address both inquiries, the Court must first determine what law governs interpretation of the insurance policies. Each issue is discussed in turn.

1. <u>Washington law governs interpretation of the insurance policies.</u>

As this action is brought pursuant to diversity jurisdiction and Washington is the forum state, Washington law governs the Court's choice-of-law analysis. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000); *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); ECF No. 1 at 4 ¶ 2.1. Whether a court in Washington

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *9**

should apply a foreign state's law is a two-party inquiry. First, the court must find that an "actual conflict" exists between Washington law and the law of a foreign state. *Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 167 P.3d 1112, 1120 (Wash. 2007). An "actual conflict" exists if the outcome of an issue is different depending on which state's law applies. *Id.* "[W]here laws or interests of concerned states do not conflict," the situation presents a "false conflict" and "the presumptive local law is applied." *Id.* (quoting *Burnside v. Simpson Paper Co.*, 123 Wash. 2d 93, 864 P.2d 937, 941 (Wash. 1994)); *Seizer v. Sessions*, 132 Wash. 2d 642, 940 P.2d 261, 264 (Wash. 1997). In contrast, if there is a real conflict of law, the governing law will be that of the state with the most significant relationship to the issue in question. *Williams v. State*, 76 Wash.App. 237, 885 P.2d 845, 848 (Wash. Ct. App. 1994) (quoting *Burnside*, 864 P.2d at 940–41).

The insurance policies do not include choice-of-law provisions. The Reinlands contend—and Country Mutual appears to agree—that the Inland NW policy is governed by the law of Washington, and the Reinland policy is governed by the law of Idaho. ECF No. 49 at 12–13. Defendant Steven O. Anderson argues that Washington provides the controlling law because neither Country Mutual nor the Reinlands have shown an "actual conflict" between Washington and Idaho law. ECF No. 59 at 6–7.

The Court finds that there is no fundamental difference between Washington and Idaho law that would apply to the insurance policies. To the extent there is a conflict with respect to the states' adoption of the doctrine of efficient proximate cause, the Court need not perform an efficient cause analysis in this case for the reasons discussed below.[4] Accordingly, the Court applies Washington law.

---

[4] Washington State, along with most jurisdictions, has expressly adopted the rule of "efficient proximate cause" to determine whether claimed injuries or damages are caused by a covered or excluded peril under an insurance policy. *Xia v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *10

2.     Country Mutual did not waive its right to assert defenses to coverage.

Next, the Reinlands contend that Country Mutual waived coverage defenses—and thus should be estopped from denying coverage—because it issued legally deficient reservation of rights letters. They assert that a reservation of rights letter sent on October 15, 2018 pertaining to the Reinland policy was inadequate because it was not specifically addressed to Thomas Reinland, Kunya Reinland, Ashly Reinland, and Reinland Properties, LLC. *See generally* ECF No. 55-1. In addition, the Reinlands aver that the letter sent on April 15, 2019 regarding the Inland NW policy was "defective" because it did not reference provisions of the relevant policy. *See generally* ECF No. 55-2. Specifically, the Reinlands note that the wrong policy number is cited on one page of the letter. As with the October 15, 2018 letter, they also argue that the April 15, 2019 letter did not provide sufficient notice to them because it did not address their individual status as insureds.

Conversely, Country Mutual argues that its reservation of rights was adequate because the October 15, 2018 letter was properly addressed to the named insured, Inland Northwest Equipment Auction, Inc., in the "care of" Thomas Reinland and that all relevant parties were notified of its contents. Country Mutual also contends that—besides one typographical error in the April 15, 2019 letter—the reservation of rights letters laid out the exact policy exclusions presented as a defense in this lawsuit.

---

*ProBuilders Specialty Ins. Co. RRG*, 188 Wash. 2d 171, 400 P.3d 1234, 1240 (Wash. 2017). The Idaho Supreme Court has not expressly adopted the rule but has cited the doctrine favorably. *ABK, LLC v. Mid-Century Ins. Co.*, 166 Idaho 92, 454 P.3d 1175 (Idaho 2019) (citation omitted) ("'The EPC doctrine is generally recognized as the universal method for resolving coverage issues involving the concurrence of covered and excluded perils.'").

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *11**

The Court finds that Country Mutual did not waive its right to assert defenses to coverage on the underlying claims. First, it is evident that the October 15, 2018 letter was properly addressed to its insured, Inland Northwest Equipment Auction, Inc. Country Mutual expressly agreed to provide a defense subject to a reservation of rights to it "along with related individuals and entities named as defendants" in the relevant lawsuits, which includes the Reinland Defendants. ECF No. 55-1 at 2. The Reinlands' argument would have more merit if Thomas Reinland, Kunya Reinland, Ashly Reinland, and Reinland Properties, LLC individually tendered claims; however, they tendered one claim to Country Mutual through their shared attorney. And crucially, there is no dispute that the Reinlands received actual notice of Country Mutual's agreement to provide a defense subject to a reservation of rights.

Second, the Court concludes that the reservation of rights letters were sufficiently detailed because they informed the parties of the specific policy defenses Country Mutual sought to assert. *See Weber v. Biddle*, 4 Wash. App. 519, 483 P.3d 155, 159 (Wash. Ct. App. 1971) (finding that waiver may occur where a reservation of rights is "general in nature" and does not "state the specific policy defenses upon which the insurer intends to rely"). Despite one typographic error that listed the wrong policy number, the April 15, 2019 letter cites the language of the correct policy and states that Country Mutual will provide the insureds and related individuals named as defendants in the lawsuits with a defense under the relevant policy number, AM 9005148 06. ECF No. 55-2 at 2, 4. The letter then enumerates the precise exclusions Country Mutual now asserts preclude coverage of the claims, to wit: the pollution exclusion and late notice of the claims. *Id.* at 4–5. The same is true for the October 15, 2018 letter. ECF No. 55-1 at 4–7. For these reasons, Country Mutual did not waive its defenses to coverage.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** *12

### 3. The precipitating act was an uncovered peril.

Finally, the Court considers whether Country Mutual is entitled to declaratory relief. The insurance policies provide that coverage does not apply to, among other things, bodily injury or property damage arising out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," (1) "[a]t or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste," and/or (2) "[w]hich are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for" any insured or an individual or organization the insured may be legally responsible. ECF No. 1-2 at 73–74. "Pollutants" is defined in part as "any solid, liquid, gaseous or thermal irritant or contaminant. Including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"; and "waste" includes "materials to be recycled, reconditioned or reclaimed." ECF No. 1-2 at 69, ¶ 10; ECF No. 1-1 at 11; ECF No. 1-2 at 85.

In Washington, insurance policies are construed as contracts. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 110 P.3d 733, 737 (Wash. 2005). If the language of an insurance policy is clear and unambiguous, courts must enforce it as written. *Id.* To determine whether coverage exists, courts in Washington utilize a two-step process: "The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash. 2d 724, 837 P.2d 1000, 1003–04 (Wash. 1992). Generally, policy coverage exclusions in Washington run contrary to the fundamental purpose of insurance, and courts will not extend them beyond their clear and unequivocal language. *City of Bremerton v. Harbor Ins. Co.*, 92 Wash. App. 17, 963 P.2d 194, 196 (Wash. Ct. App. 1998). Absolute pollution exclusions purport to exclude coverage from all losses related to pollution; they are enforceable and apply to losses arising from (1) a pollutant (2) acting as a pollutant. *Quadrant*, 110 P.3d at 741.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** *13

Washington utilizes the rule of "efficient proximate cause" to provide coverage "where a covered peril sets in motion a casual chain[,] the last link of which is an uncovered peril." *Key Tronic Corp. Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash. 2d 618, 881 P.2d 201, 206 (Wash. 1994). "If the initial event, the 'EPC,' is a covered peril, then there is coverage under the policy regardless [of] whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy." *Xia*, 400 P.3d at 1240 (citing *Key Tronic Corp.*, 881 P.2d at 206). However, "the efficient proximate cause rule operates *only* when the precipitating event is a covered peril. There is no coverage when the precipitating event is itself excluded from coverage under the policy." *Pluta v. United Servs. Auto. Ass'n*, 72 Wash. App. 902, 866 P.2d 690, 693 (Wash. Ct. App. 1994) (emphasis added).

The parties agree that the absolute pollution exclusion provision applies and the injuries in the Underlying Lawsuits were from a "pollutant"—chlorine gas—acting as a pollutant. However, the insureds contend that coverage nonetheless exists because the efficient cause of the plaintiff's injuries was "[Mr.] Reinland's alleged negligence in inspecting, or failing to inspect, the scrap metal at the Jackson/Ibex property." ECF No. 58 at 5–6. In contrast, Country Mutual avers that the initial act setting into motion the cause of events was the Reinlands' agreement to recycle the chlorine-containing scrap metal, which fits into the pollution exclusion. ECF No. 65 at 4.

In this case, the Court need not consider the efficient cause of the injuries because the initial peril—negligent identification of a metal cylinder for recycling or disposal—fits within the "pollution exclusion" and is an uncovered peril. The rule of efficient proximate cause is only operative when the precipitating event is a covered peril. *Xia*, 400 P.3d at 1240; *Key Tronic Corp.*, 881 P.2d at 206; *Pluta*, 866 P.2d at 693. In this case, the alleged injuries arose from an agreement to transport and process a "pollutant" as waste—that is, chlorine gas within a metal container

intended for recycling. ECF Nos. 1-1 at 11; 1-2 at 85. Because a pollutant was "released" at Pacific Steel, a location which "was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste," and separately, because the pollutant-containing waste was "transported, handled, stored, treated, disposed of, or processed as waste" for an insured, the precipitating act was not a covered peril. ECF Nos. 1-1 at 82; 1-2 at 73. The insureds have failed to demonstrate that the loss falls within the scope of the policy's insured losses, as general "negligence" in this context is not an independent peril distinct from the pollution exclusions. *See McDonald*, 837 P.2d at 1003–04. The Reinlands' agreement to have the metal cylinder transported to a remote facility for recycling, which resulted in the release of chlorine gas, is unambiguously excluded by the plain language of the policies.

Further, Country Mutual has affirmatively demonstrated that the loss is excluded by the pollution exclusion. *McDonald*, 837 P.2d at 1003–04. This is not a case where the initial peril was unrelated to the handling or disposal of pollutants and waste. Notably, none of the Defendants-insureds claim that the damages and injuries are in anyway distinct from, or caused by any event distinct from, the release of a pollutant that was "handled, transported, dispose of or processed as waste" by the Reinlands. The Defendants-insureds also do not dispute that the injuries resulted from the release of pollutants "at a location" used by the insureds "or others for the handling, storage, disposal, processing or treatment of waste." ECF Nos. 1-1 at 82; 1-2 at 9.

If there was any doubt, this district court's decision in *Dolsen Companies v. Bedivere Ins. Co.*, 264 F. Supp. 3d 1083 (E.D. Wash. 2017) is instructive. The plaintiffs in *Dolsen Companies* operated an animal farm that processed millions of gallons of liquid manure stored in holding ponds. The holding ponds leaked and resulted in seepage of over 1.6 million gallons of untreated manure into groundwater. This Court found that the policy's absolute pollution exclusion applied because the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *15

1   initial act—the storing of manure—involved pollutants in the first place. The district
2   court drew a distinction between cases like *Quadrant*, where the insured's initial act
3   involved the use, generation, transport or disposal of a pollutant—and cases like *Xia*,
4   where the dispersal of a pollutant was the incidental result of the insured's initial
5   negligent acts:

> The distinguishing feature between these two lines of cases is the relation between the initial act and the pollutant causing harm—viz., whether the initial peril was the polluting act (i.e., whether the incident involved pollutants in the first place) or whether the initial peril was some other act that incidentally led to a polluting harm. Although subtle, this framework is workable and leads to a clear result in this case: the initial act was intimately tied to the pollutant and thus the initial peril was the polluting act.

264 F.Supp.3d at 1093. In this matter, the only distinguishing factor from *Dolsen* is that the Reinlands did not know the metal cylinder contained a hazardous chemical when they decided to recycle it. But, in either case, the initial event was an agreement to recycle (or dispose of) the pressurized cylinder containing chlorine gas. It did not incidentally lead to the polluting harm, but rather involved pollutants and their disposal at the outset. Coverage does not apply to the initial act, notwithstanding whether the Reinlands knew of the cylinder's contents.

Due to the foregoing, the Court holds that Country Mutual Insurance Policy numbers AM 9005148 06 and AM 9167456 01 do not provide liability or property damage coverage for any personal injury claims for damages arising out of the August 12, 2015 incident, and Country Mutual does not have a further duty to defend Defendants-insureds under the terms and provisions of the policies. In addition, because the Court finds that the policies do not cover the underlying claims, the Court declines to consider Country Mutual's additional defense of late notice.

//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . \*16**

## Conclusion

Washington law governs interpretation of the Country Mutual insurance policies. The Court finds that Country Mutual issued legally sufficient reservation of rights letters and is not estopped from asserting defenses to coverage. Further, the Court holds that the policies do not provide coverage for the damages and injuries asserted in the Underlying Lawsuits, as the peril unambiguously fits into the policies' pollution exclusion clauses. For these reasons, Country Mutual is granted summary judgment and declaratory relief.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, ECF No. 49, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 52, is **GRANTED**.

3. The parties' Stipulated Motion to Dismiss with Prejudice, ECF No. 69, is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Plaintiff consistent with this Order.

4. The District Court Executive is directed to **CLOSE** this file.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 20th day of January 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . *17**